UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAREN EARL RIDLEY, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-32-PPS-JEM |
| RON NEAL, et al., | |
| Defendants. | |

OPINION AND ORDER

Daren Earl Ridley, a prisoner without a lawyer, is proceeding in this case on two claims. First, there are the set of claims against Officer Kevin Cross, Lieutenant Nadine Smith-Robinson, Officer Darnell Crockett, Sergeant Jeniene Walton, Lieutenant Dennis Koen, Jacqueline Mayes, and Dr. Christina Chico "in their personal capacity for money damages for denying him medical care for injuries he suffered in a January 2023 fire in violation of the Eighth Amendment." Second, there are the claims against Commissioner Christina Reagle, Warden Ron Neal, Assistant Warden Dawn Buss, Major Douglas Wardlow, Safety Hazard Manager Deborah Taylor, and Supervisor of Fire Training Gordon Beecher "in their personal capacity for monetary damages for deliberate indifference to the risk of harm posed by a fire that occurred in January 2023 in violation of the Eighth Amendment[.]" ECF 8 at 11.

All of the defendants except Dr. Chico now seek summary judgment, arguing Ridley did not exhaust his available administrative remedies before filing this lawsuit. ECF 63. The matter is fully briefed. ECF 102, 103, 110, 111, 116. I'll refer to this group of

defendants as "the State Defendants." Dr. Chico filed a separate motion for summary judgment, also arguing Ridley did not exhaust his administrative remedies before filing this lawsuit. ECF 69. That motion is also now fully briefed. ECF 100, 101, 112, 113.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *see also Chambers v. Sood*, 956 F.3d 979, 984-85 (7th Cir. 2020). "Failure to exhaust is an

2

affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* But inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). When prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not considered "available." *Id.*

To fully exhaust a grievance, an inmate must complete three steps before filing a lawsuit: (1) a formal grievance; (2) a Level I appeal to the warden; and (3) a Level II appeal to the Department Grievance Manager. ECF 64-2 at 3. The parties agree Ridley never fully exhausted any relevant grievance. I therefore accept that as undisputed. Instead, Ridley argues his administrative remedies were unavailable because he submitted an "emergency grievance" and never received any receipt or response from the Grievance Specialist. In other words, Ridley contends he exhausted all of the administrative remedies that were available to him. ECF 100 at 2; 102 at 2.

Specifically, Ridley testified at his deposition to the following facts: (1) on January 14, 2023, Ridley placed an emergency grievance in his cell door bars for pick-up; (2) Ridley did not see who picked up his grievance, but when he woke up the next

3

morning it was gone; (3) Ridley never received any receipt or response to his emergency grievance from the grievance office; and (4) Ridley never submitted any written notice to the Grievance Specialist regarding the lack of receipt or response to his emergency grievance. ECF 64-4 at 18-22.

In their summary judgment motion, the defendants argue that, accepting as true that Ridley submitted an emergency grievance on January 14 and never received any receipt or response from the grievance office, Ridley nevertheless had available administrative remedies he did not exhaust before filing this lawsuit because he concedes he did not comply with the Offender Grievance Process' "notice requirement." Specifically, the Offender Grievance Process provides that once an inmate submits a grievance, the Grievance Specialist has ten (10) business days to screen the grievance and either accept and record it, or reject it. ECF 64-2 at 9-10. If an inmate submits a grievance and "does not receive either a receipt or a rejected form from the Offender Grievance Specialist within ten (10) business days of submitting it," the Offender Grievance Process imposes a "notice requirement" on the inmate by which the inmate must "notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days." *Id.* at 9.

It is well established that the "notice requirement" of the Offender Grievance Process is a necessary step to exhaust a grievance. *See Lockett*, 937 F.3d at 1027 (even accepting as true that the inmate filed a grievance, he must provide evidence he contacted the Grievance Specialist when he received no response to his grievance);

4

*Lipscomb v. Galipeau*, No. 3:22-CV-106-JD-MGG, 2023 WL 1778435, at *3 (N.D. Ind. Feb. 6, 2023) (granting summary judgment to the defendant because the inmate did not notify the Grievance Specialist after not receiving a response to his grievance); *Rambo v. Smiley*, No. 3:18-CV-740-JD-MGG, 2020 WL 1157865, at *4 (N.D. Ind. Mar. 10, 2020) (same). But Ridley argues this requirement of the Offender Grievance Process does not apply here because he filed an emergency grievance, which is subject to a different set of procedures. *See* ECF 64-2 at 5 (permitting an inmate to submit an emergency grievance, which shortens the Grievance Specialist's timeline for responding to the grievance).

Let's assume that Ridley submitted an emergency grievance on January 14 and never received any receipt or response from the grievance office. The fact of the matter is that Ridley was still required to comply with the Offender Grievance Process' notice requirement and notify the Grievance Specialist of the lack of receipt or response to his emergency grievance. Specifically, while Ridley is correct that the Offender Grievance Process provides a different procedure for *responding* to an emergency grievance, there's no evidence the Offender Grievance Process changes the process for *screening* an emergency grievance.

The Southern District of Indiana recently addressed this issue and reached the same conclusion. In *Brock v. Centurion Health of Indiana, LLC*, No. 1:22-CV-1734-SEB-CSW, 2024 WL 247272, at *3 (S.D. Ind. Jan. 23, 2024), the court determined the inmate was required to notify the Grievance Specialist of the lack of response to his emergency grievance, as the emergency grievance procedure "does not set out different processes

5

for screening, rejecting, or logging emergency grievances." Similarly, in *Peacher v. Reagle*, No. 1:21-CV-2361-JMS-TAB, 2022 WL 1017327 (S.D. Ind. Apr. 5, 2022), the court determined the Offender Grievance Process changes the procedure for *responding* to an emergency grievance, but does not change the procedure for *screening* an emergency grievance. Specifically, the court noted:

> To be sure, the grievance policy provides an accelerated timeline for emergency grievances. But it does not create a special deadline for every step of the process—only some. For example, the very first step in the grievance process is for the grievance specialist to decide whether to accept and record the grievance or to reject and return it. The usual time to take such action is 10 business days, and the emergency grievance provision does not create an alternative deadline.

*Id.* at *5 (citations omitted).

I agree with the analysis of the Southern District of Indiana. Specifically, nothing in the text of the Offender Grievance Process indicates the "notice requirement" does not apply to emergency grievances. In fact, Section X(C) of the Offender Grievance Process (which lays out the procedure for responding to a grievance) explicitly states that it does not apply to emergency grievances. ECF 64-2 at 10, Section C ("*If the matter is not an emergency grievance*, or a PREA grievance, the Offender Grievance Specialist has fifteen (15) business days from the date that the grievance is recorded to complete an investigation and provide a response to the offender") (emphasis added). The fact that Section X(C) explicitly states it does not apply to emergency grievances while Section X(B) is silent on the matter implies that the screening procedure applies to emergency grievances. *See Bittner v. United States*, 598 U.S. 85, 94 (2023) ("When Congress includes

6

particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning").

Additionally, reading the "notice requirement" out of the emergency grievance procedure would be problematic, as it would create a loophole by which any inmate could bypass the PLRA's exhaustion requirement merely by stating he submitted an emergency grievance and never received any receipt or response from the Grievance Specialist. This goes against the purpose of the PLRA's exhaustion requirement, which is to give the prison notice of the problem and an opportunity to address it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Requiring the inmate to notify the Grievance Specialist of the lack of response to his emergency grievance enforces this purpose by giving the Grievance Specialist an opportunity to address the grievance and potentially fix the problem.

Accordingly, the fact that Ridley filed an emergency grievance rather than a normal grievance did not negate the need for him to follow up when he received no response to his grievance. Thus, accepting as true that Ridley submitted an emergency grievance on January 14, 2023, and never received any receipt or response from the grievance office, the undisputed facts show Ridley still had available administrative remedies he did not exhaust before filing this lawsuit because he did not comply with the Offender Grievance Process' requirement to notify the Grievance Specialist of the lack of receipt or response to his emergency grievance. The defendants have therefore met their burden to show Ridley did not exhaust his available administrative remedies before filing this lawsuit. Summary judgment is warranted in their favor.

For these reasons, the court:

(1) GRANTS the defendants' motions for summary judgment (ECF 63; ECF 69); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Daren Earl Ridley and to CLOSE this case.

SO ORDERED.

ENTERED: April 14, 2025.

>/s/   Philip P. Simon
>PHILIP P. SIMON, JUDGE
>UNITED STATES DISTRICT COURT